# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JASON L. STIRES,

      Plaintiff,

                                      Civil Action 2:17-cv-811
                                      Judge James L. Graham
     v.                              Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Jason L. Stires, brings this action under 42 U.S.C. § 405(g) for a review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.   BACKGROUND

Plaintiff protectively filed his application for a period of disability and disability insurance benefits on April 13, 2015. In his application, Plaintiff alleged a disability onset date of April 9, 2015. Plaintiff's application was denied initially on September 8, 2015, and upon reconsideration on January 20, 2016. Plaintiff then sought a hearing before an administrative law judge. Administrative Law Judge Hartranft ("ALJ") held a hearing on August 9, 2016, at

which Plaintiff failed to appear. Plaintiff's counsel appeared at the hearing and presented Plaintiff's disability case in his absence. On August 9, 2016, the ALJ sent Plaintiff a Notice to Show Cause for Failure to Appear, to which Plaintiff responded on April 23, 2016, through his representative. In his response, Plaintiff represented that, although he had communicated with his counsel regarding the time for the hearing, and had signed an acknowledgement of the hearing date and time, he mistakenly calendared the hearing time as 2:00 p.m. rather than 10:00 a.m. Plaintiff also speculated that his psychological conditions might have contributed to him miscalendaring the hearing time, and he requested a supplemental hearing. The ALJ denied Plaintiff's request, finding no good cause for Plaintiff's failure to appear. On October 3, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. The appeals council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Errors, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ committed reversible error in failing grant Plaintiff a supplemental hearing. Plaintiff posits that the ALJ erroneously failed follow the proper procedures for determining whether a supplemental hearing is warranted as required under Section I-2-4-25(D) of the Social Security Administration Office of Hearing and Appeals' *Hearing, Appeals, and Litigation Law Manual* ("HALLEX"), 1993 WL 643012. Plaintiff further submits that the ALJ erroneously failed to consider Plaintiff's explanation for missing the hearing under the "good cause" standard articulated HALLEX § I-4-4-25(B), 1993 WL 643012. In Plaintiff's view, the ALJ's failure to follow the procedures set forth in the HALLEX manual amounts to reversible error, necessitating remand

for proper consideration by the ALJ.   Second, Plaintiff asserts reversal is required because the ALJ failed identify Plaintiff's post-traumatic stress disorder ("PTSD") as a severe impairment at step two.   According to Plaintiff, the ALJ's failure to consider the Plaintiff's PTSD at step two, together with a subsequent reviewer's inability to determine whether the ALJ considered his PTSD in determining the residual functional capacity ("RFC"), requires remand.

## II. THE ADMINISTRATIVE DECISION

On October 3, 2016, the ALJ issued his decision.   (PAGEID # 37-85.)   At step one of the sequential evaluation process,[1] the ALJ determined that Plaintiff had not engaged in substantially gainful activity since April 9, 2015, his alleged onset date of disability.   (*Id.* at 70.) The ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the spine; an affective disorder; an anxiety disorder; an antisocial personality disorder; and a history of substance abuse, specifically opiate abuse."   (*Id.*)   He further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the

---

[1]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.   *See* 20 C.F.R. § 416.920(a)(4).   Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 71.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could frequently climb ramps and stairs, stoop, and crouch. He could perform simple, routine, repetitive tasks, involving only simple work related decisions and few if any workplace changes. The claimant would require an environment without strict production quotas or fast-paced work, such as an assembly line. Further, he could have only occasional/superficial interaction with the general public, coworkers, and supervisors.

(PAGEID # 74.) In reaching this determination, the ALJ followed a two-step process. First, the ALJ found that "[a]fter careful consideration of the evidence, . . . [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (PAGEID # 75.) Second, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

In calculating Plaintiff's RFC, the ALJ discussed the record evidence and Plaintiff's counsel's representations made at the hearing. The ALJ also reviewed the Department of Veteran's Affairs' ("VA") disability rating, giving that rating some weight. Ultimately, the ALJ concluded that "[i]n addition to the general lack of objective evidence, the evidence of record does not support [Plaintiff's] subjective complaints." (PAGEID # 80.)

Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (PAGEID # 85.) He therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since his alleged onset date through the date of

the decision.

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As set forth above, Plaintiff argues that reversal is required because (1) the ALJ failed to the procedures set forth in § I-2-4-25 of the HALLEX manual, and (2) the ALJ failed identify Plaintiff's PTSD as a severe impairment at step two of his evaluation. The undersigned considers each of these contentions of error in turn.

**A.     HALLEX § I-2-4-25**

The undersigned finds Plaintiff's first contention of error, that the ALJ failed to follow the procedures prescribed in § I-2-4-25(D) of the HALLEX manual, to be without merit.

The HALLEX manual "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Actions Levels."  HALLEX § I-1-0-1, 2005 WL 1863821.   HALLEX § I-2-4-25(D)(2) sets forth the Social Security Administration's procedures for when, as here, the claimant fails to appear at the hearing, but an appointed representative appears and continues to represent the claimant.   This Subsection provides as follows:

> **2. Representative Continues to Represent the Claimant During the Hearing**
>
> If an appointed representative appears at the scheduled hearing without the claimant and continues to represent the claimant during the hearing, dismissal is never appropriate. However, the ALJ may determine that the claimant has constructively waived the right to appear at the hearing if:
>
> - The representative is unable to locate the claimant;
>
> - The Notice of Hearing was mailed to the claimant's last known address; and

- The contact procedures required by 20 CFR 404.938 and 416.1438, as described in HALLEX I-2-3-20, have been followed.

**a. Constructive Waiver of Right to Appear**

If the ALJ finds that the claimant has constructively waived the right to appear at the hearing, the ALJ need not proceed with the hearing and may choose to issue a decision on the record. However, if medical expert or vocational expert testimony is needed to resolve the case, the ALJ may choose to proceed with the hearing, accepting the testimony of the witness(es) and allowing the appointed representative to question the witness(es) and make arguments on the claimant's behalf.

In any event, the ALJ will advise the appointed representative, either on the record during the hearing or in writing thereafter, that he or she will not send a Request to Show Cause for Failure to Appear to the claimant because the claimant has constructively waived the right to appear at a hearing. When done in writing, the ALJ must associate the writing with the record.

**b. No Constructive Waiver**

If the ALJ finds that the claimant has not constructively waived the right to appear at the hearing, the ALJ may choose to proceed with the hearing, accepting the testimony of the witness(es) and allowing the appointed representative to question the witness(es) and make arguments on the claimant's behalf. The ALJ will advise the appointed representative that a Request to Show Cause for Failure to Appear will be sent to the claimant to ask why he or she did not appear at the scheduled hearing and whether a supplemental hearing should be held. After the 10-day response period expires (with an additional five days for mailing time), the ALJ will either:

- Determine that the claimant has constructively waived his or her right to appear for a hearing (if the claimant fails to respond to the Request to Show Cause for Failure to Appear or fails to show good cause for failure to appear at the scheduled hearing), and issue a decision based on the evidence of record; or

- Offer the claimant a supplemental hearing to provide testimony if the claimant establishes good cause for failure to appear at the scheduled hearing.

1993 WL 643012.

In this case, Plaintiff first argues that the ALJ failed to comply with the foregoing

procedures because he did not make an initial determination as to whether Plaintiff had constructively waived his right to a hearing. (Pl.'s Statement of Errors 12-13, ECF No. 17 (arguing that ALJ did not consider whether there was constructive waiver by considering whether his attorney had been able to reach him, the hearing notice was sent to the correct address, and contact procedures had been followed).) Plaintiff submits that "[t]here is clearly not constructive waiver here as [Plaintiff's counsel] had been in contact with the client." (*Id.* at 13.) Review of the hearing transcript demonstrates that (1) the ALJ *did* consider at the hearing whether Plaintiff had constructively waived the hearing, and (2) the ALJ complied with HALLEX Subsection I-2-4-25(D)(2)(b) because he had found no constructive waiver at that juncture. The transcript reflects that the ALJ considered that Plaintiff's attorney had contacted Plaintiff and that Plaintiff had informed his attorney that he had the hearing time wrong. (PAGEID # 92.) The ALJ therefore, in accordance with Subsection I-2-4-25(D)(2)(b), proceeded with the hearing and advised Plaintiff's counsel that he was going to send a Notice to Show Cause to Plaintiff. (PAGEID # 92-93, 101.) If, as Plaintiff appears to suggest, the ALJ had concluded that Plaintiff had constructively waived his right to appear at the hearing, the ALJ would have advised Plaintiff's counsel "either on the record during the hearing or in writing thereafter, that he [would] *not* sent a Request to Show Cause for Failure to Appear to the claimant because the claimant has constructively waived the right to appear at the hearing." (*See* HALLEX Subsection I-2-4-25(D)(2)(a) (emphasis added).) Plaintiff's assertion that the ALJ failed to determine whether Plaintiff had constructively waived his right to a hearing therefore lacks merit.

Also within this contention of error, Plaintiff submits that "the ALJ did not directly

8

address the issue of good cause," adding that his "conclusory statement" was not supported by sufficient analysis. (Pl.'s Statement of Errors 13, ECF No. 17.) According to Plaintiff, the ALJ should have considered Plaintiff's offered reasons for missing the hearing, but instead considered "a host of irrelevant information." (*Id*.) The undersigned likewise finds this assertion of error to be without merit and that the ALJ did not abuse his discretion in finding that Plaintiff had failed to show good cause for his failure to appear at the scheduled hearing.

Plaintiff's affidavit that he submitted in response to the Show Cause Notice indicates that he put the wrong time on his calendar. (PAGEID # 196.) Plaintiff also states that his psychological conditions "cause problems with [his] attention and concentration and perhaps that his why [he] made a mistake in regard to the hearing." (*Id*.) Within his decision, the ALJ explicitly considered Plaintiff's proffered response. In concluding that Plaintiff had failed to show good cause, the ALJ pointed out that Plaintiff had received proper notice and had discussed the hearing with his attorney a week prior and that Plaintiff had signed an acknowledgement of the hearing that had the correct date and time. The ALJ also noted that "[t]he record is devoid of any evidence suggesting an intellectual deficiency or deficit and no such arguments were presented at the hearing." (PAGEID # 67.)

HALLEX Subsection I-2-4-25(D)(2)(b), as discussed above, applies because the ALJ initially found no constructive waiver. When, as here, a claimant responds to the Show Cause Notice, that Subsection advises that the ALJ must issue a decision based on the record when the claimant's response fails to show good cause for failing to appear at the scheduled hearing, and, if the response does show good cause, offer a supplemental hearing. Hallex Subsection I-2-4-25(B) offers the following definition of "Good Cause for Failure to Appear":

9

> The term "good cause" refers to a reasonable explanation for failing to comply with a requirement. When determining whether good cause exists for failure to appear, an ALJ must base his or her decision on the circumstances of each individual case. In doing so, the ALJ must consider any physical, mental, educational, or linguistic limitations that may have prevented the claimant from appearing at the scheduled time and place of the hearing, akin to the requirements for consideration of good cause for late filing in 20 CFR 404.911 and 416.1411 and Social Security Ruling 91-5p.

1993 WL 643012. HALLEX Subsection I-2-4-25(C) instructs that although "[t]here are no set criteria for determining what constitutes good cause for failure to appear . . . good cause generally exists" when (1) the claimant did not receive proper notification of the hearing, (2) "an unforeseeable event occurred," such that neither the claimant nor the ALJ could timely request postponement of the hearing; or (3) the appointed representative withdrew shortly before the hearing without the claimant's knowledge. The regulations cited within Hallex Subsection I-2-4-25(B), 20 C.F.R. §§ 404.911 and 416.1411, offer the following relevant guidance regarding examples of "good cause":

> (a) In determining whether you have shown that you had good cause for missing a deadline to request review we consider-
>
>> (1) What circumstances kept you from making the request on time;
>> (2) Whether our action misled you;
>> (3) Whether you did not understand the requirements . . . and
>> (4) Whether you had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented you from [complying with the notice of hearing].
>
> (b) Examples of circumstances where good cause may exist include, but are not limited to, the following situations:
>
>> (1) You were seriously ill and were prevented from contacting us in person, in writing, or through a friend, relative, or other person.
>> (2) There as a death or serious illness in your immediate family.
>> \* \* \*
>> (6) We gave you incorrect or incomplete information . . . . You did not receive notice of the determination or decision.

* * *

  (9) Unusual or unavoidable circumstances exist, including the circumstances described in paragraph (a)(4) of this section . . . .

20 C.F.R. §§ 404.911 and 416.1411.

  Applying the foregoing guidance here, the undersigned concludes that the ALJ reasonably concluded that Plaintiff had failed to show good cause for failing to appear at the hearing. As a threshold matter, Plaintiff faults the ALJ for not providing a more extensive analysis, but nothing in HALLEX Subsection I-2-4-25(D)(2)(b) imposes such a heightened articulation requirement. Significantly, *none* of the examples offered in either Hallex or the regulations HALLEX references mandate or even suggest a different conclusion. Rather, the offered examples focus on whether the claimant had notice, was able to understand the notice, and was able to attend the hearing. *See* HALLEX Subsection I-2-4-25(C); 20 C.F.R. §§ 404.911 and 416.1411; *see also Young v. Astrue*, No. 09-1496, 2010 WL 2891501, at *2 (W.D. Pa. July 21, 2010) ("[E]stablishing good cause for failing to attend a scheduled hearing largely revolves around whether the claimant or the claimant's representative received proper notification of the hearing or was otherwise prevented from attending the hearing . . . ."); *cf.* HALLEX Subsection I-2-4-25(C)(3)(a) ("The ALJ need not develop good cause if the record shows that the claimant received the [Show Cause Notice] and the claimant does not have a physical, mental, educational, or linguistic limitation *that may affect his or her ability to understand* the Notice of Hearing." (emphasis added)). Plaintiff acknowledged that he had proper notice and that he was able to attend, and the ALJ reasonably pointed out that the record did not reflect that Plaintiff suffered from an intellectual deficit that would have interfered with his ability to understand the proper notice he had received. *Cf. Neuzil v. Astrue*, No.

11

2:12-cv-34, 2013 WL 2445212, at *6, *9 n.10 (N.D. Ohio June 5, 2013) (finding no good cause and rejecting claimant's argument that her severe mental impairments of depression, bipolar disorder, and personality disorder were overlooked with respect to establishing good cause where nothing in claimant's good cause response letter supported such a conclusion and Plaintiff had instead stated that she did not attend because she got lost and was unable to find someone to help give her directions); *Young*, 2010 WL 2891501, at *2 (ALJ did not abuse discretion in finding no good cause where the claimant alleged faulty directions and inability to locate the hearing office). That the ALJ made additional findings that were not central to his good-cause determination (such as that Plaintiff was a non-essential witness in light of his attorney's continued representation) does not persuade the undersigned to conclude that he abused his discretion in concluding that Plaintiff failed to establish good cause for missing the hearing.

Even if the ALJ had failed to comply with HALLEX procedures, remand would not be automatic because HALLEX is not binding on this Court, and Plaintiff has failed to sufficiently articulate prejudice attributable to any such noncompliance. The United States Court of Appeals for the Sixth Circuit has held that the HALLEX manual does not carry the force of law. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008) (noting the HALLEX is "not binding on this court"); *see also Kostyo v. Colvin*, No. 3:14-cv-1238, 2015 WL 4067260, at *7 (N.D. Ohio Jul. 2, 2015) ("[E]ven assuming for the sake of argument that the HALLEX manual was not followed, [Plaintiff] cites no law suggesting that failure to do so is grounds for remand."); *Parra v. Astrue*, 481 F.3d 742, 749 (9th Cir. 2007) ("[I]nternal agency documents such as [the HALLEX] do not carry the force of law and are not binding upon the agency."); *Chaluisan v. Comm'r of Soc. Sec.*, 481 F. App'x 788, 791 (3d Cir. 2012) ("Internal social

12

security manuals lack the force of law and do not bind the Social Security Administration."). Where, however, a claimant demonstrates that the ALJ's departure from the procedures set forth in HALLEX causes sufficient prejudice, remand may be required. *See Engelhart v. Comm'r of Soc. Sec.*, No. 2:15-cv-2937, 2017 WL 780606, at *5 (S.D. Ohio Mar. 1, 2017) (acknowledging the "minority view" that permits relief "where a plaintiff can demonstrate sufficient prejudice from nonobservance of the HALLEX procedures) (citing *Estep v. Astrue*, No. 2:11-0017, 2013 WL 212643, at *12 (M.D. Tenn. Jan. 18, 2013) (collecting cases)). Here, Plaintiff has failed to identify any actual prejudice, and the Court is unable to independently discern such prejudice given that the ALJ proceeded with the hearing permitted Plaintiff's attorney to present evidence. Thus, even if the ALJ had failed to comply with HALLEX procedures, the undersigned would decline to recommend remand. *See Engelhart*, 2017 WL 780606, at *6 (holding that the claimant was not entitled to relief because "even if the ALJ did not strictly follow the HALLEX guidelines, [the claimant] has not shown how she was prejudiced by the departure . . . as required under the minority view"); *Estep*, 2013 WL 212643, at *12 ("In this case, the plaintiff has made no allegation of prejudice and none is apparent from the record. Consequently, he is not entitled to relief on this issue."); *Young*, 2010 WL 2891501, at *2 (no showing of prejudice where the claimant failed to appear at the hearing and ALJ decided case solely on the medical record because claimant did not "discuss in what manner the documentary evidence relied upon by the ALJ may have been misinterpreted absent his testimony or what his testimony would have added to the record").

In summary, the undersigned finds Plaintiff's contention that the ALJ's failed to follow HALLEX procedures to be without merit. Even if, however, the ALJ had failed to comply with

HALLEX procedures, remand is unwarranted because Plaintiff has failed to sufficiently articulate prejudice attributable to the ALJ's alleged noncompliance. Under these circumstances, the undersigned **RECOMMENDS** that the Court decline to disturb the ALJ's exercise of discretion and that Plaintiff's first contention of error be **OVERRULED**.

**B.      The ALJ's Step-Two and RFC Determinations**

The undersigned likewise finds Plaintiff's second contention of error, that the ALJ erred in failing to identify his PTSD as a severe impairment at step two, to be without merit.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). The Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)).

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559

14

(6th Cir. 2014) (quoting 20 C.F.R. § 416.908)). Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process set out in 20 CFR 404.1520 and 416.920 . . . ."). Significantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996). "[S]ymptoms" consist of a claimant's description of his or her alleged impairment." 20 C.F.R. § 404.1528(a). In contrast, "signs" include "psychological abnormalities which can be observed." 20 C.F.R. § 404.1528(a)-(b).

Where, as here, the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same). Severe or non-severe, an ALJ need only include limitations arising from an impairment where the

15

impairment affects a claimant's capacity to work. *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) ("The RFC describes the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities. A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." (internal quotation marks and citations omitted)).

In this case, the undersigned finds that to the extent the ALJ erred in not including PTSD among the other identified mental health impairments at step two, his error was harmless. The ALJ found a number of mental health impairments to be severe and considered the limiting effects of all Plaintiff's impairments in assessing the RFC. Review of the ALJ's decision makes clear that Plaintiff's assertion that a subsequent reviewer is unable "to determine whether [Plaintiff's PTSD] was considered," (Pl.'s Statement of Errors 16, ECF No. 17), is far from accurate. To the contrary, the ALJ offered an *extensive* discussion regarding Plaintiff's allegations relating to PTSD, as well as the record evidence reflecting diagnoses and treatment of PTSD. (*See* PAGEID # 70-80.) The ALJ also offered a thorough discussion that included specific reasons for crediting and/or rejecting the limitations Plaintiff alleged were attributable to his mental impairments. Significantly, Plaintiff has failed to identify a particular limitation arising from his PTSD that the ALJ failed to consider or that the ALJ would have included in the RFC had he identified PTSD as an impairment at step two.

Because the ALJ properly considered the limiting effects of all of Plaintiff's impairments, including Plaintiff's alleged limiting effects attributable to his PTSD, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## V. DISPOSITION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE